**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| **YAZMIN ALEJANDARA JAQUEZ,** )<br>)<br>         **Plaintiff,** )<br>)<br>         v. )<br>)<br>**CAROLYN W. COLVIN,** )<br>**Acting Commissioner of Social** )<br>**Security,** )<br>)<br>         **Defendant.** )<br>_____ ) | **Case No. CV 15-3838 AJW**<br><br>**MEMORANDUM OF DECISION** |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

In an October 16, 2013 written hearing decision that constitutes the Commissioner's final decision in this case, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform a range of sedentary work, and that her RFC did not preclude her from performing alternative work available in significant numbers in the national economy. The ALJ therefore concluded that plaintiff was not disabled at any time through the date of his decision. [Administrative Record ("AR") 21-41].

///

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Severity determination**

Plaintiff contends that the ALJ erred in finding that the plaintiff did not suffer from a medically determinable, severe mental impairment and in failing to utilize the psychiatric review technique outlined in 20 C.F.R. §§ 404.1520a, 416.920a. [JS 5-20].

At step two of the sequential evaluation process, the ALJ determines whether plaintiff has any severe, medically determinable physical or mental impairments that meet the durational requirement. See 20 C.F.R. §§ 404.920(a)(4), 416.920(a)(4). A medically determinable impairment is one that "result[s] from result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms . . . ." 20 C.F.R. §§ 404.1508, 416.908. The ALJ evaluates the existence and severity of a claimant's mental impairment(s) by utilizing a "special technique," also referred to as the "psychiatric review technique." In assessing severity, the ALJ must determine whether a claimant's medically determinable impairment or combination of impairments significantly limits his or her physical

or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1521 (a), 416.921(a)[1]; Webb v. Barnhart, 433 F.3d 683, 686-687 (9th Cir. 2006). The ALJ is required to consider the claimant's subjective symptoms in making a severity determination, provided that the claimant "first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)." SSR 96-3p, 1996 WL 374181, at *2.

"An impairment or combination of impairments may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686. The ALJ "may find that a claimant lacks a medically severe impairment or combination of impairments only when [that] conclusion is clearly established by medical evidence." Webb, 433 F.3d at 687 (internal quotation marks omitted).

The ALJ found that plaintiff had severe physical impairments, but that she "fail[ed] to establish a medically determinable mental impairment, let alone a 'severe' one." [AR 31]. The ALJ acknowledged that plaintiff "claimed to have neuropsychiatric related problems," including "depression" and "anxiety," and that there was treating and other medical evidence in the record arguably supporting the existence of a severe, medically determinable mental impairment. [See AR 30-31].

First, plaintiff received mental health treatment from Warren Procci, M.D., Ph.D., a psychiatrist, beginning in March 2011. Plaintiff's treating orthopedist referred her to Dr. Procci in February 2011 for complaints of anxiety, stress, and depression secondary to chronic pain and disability. [AR 604]. The ALJ found that, "viewed in a light favorable to the claimant, records from Dr. Procci's medical firm arguably verify [plaintiff's] attendance at appointments over a period of slightly more than 12 months between March of 2011 and April of 2012." [AR 30, 641-667, 1012-1022].

Second, in June 2011, Dr. Procci completed a written mental disorder assessment form based on a

---

[1] Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. §§ 404.1521(b), 416.921(b).

3

psychiatric evaluation he conducted on March 30, 3011. [AR 30, 642-646, 650-665]. As part of his evaluation, Dr. Procci interviewed plaintiff, reviewed medical records, conducted a mental status examination, and reviewed the results of nine psychological tests.[2] [AR 650-655]. Dr. Procci's diagnoses were: (1) adjustment disorder, with mixed anxiety and depressed mood, chronic; (2) insomnia type sleep disorder due to pain; (3) psychological factors affecting medical condition; and (4) pain disorder associated with a general medical condition - orthopedic. [See AR 30-31, 642-646]. He reported that plaintiff exhibited psychological symptoms including anxiety, depression, tearfulness, sleep disorders, anger, social withdrawal, forgetfulness, low self-esteem, lack of self-confidence, difficulty making decisions, and problems concentrating. [AR 643, 646]. Dr. Procci also opined that

> due to the magnitude of plaintiff's psychological symptoms, somatic preoccupation and experience of chronic pain, her ability to cope with routine work stressors is limited. Her physical and emotional symptoms would affect her attendance and productivity. Anxiety, depression, anger, and low self-esteem would have a negative affect [sic] on all interpersonal relationships, including those in an employment setting

[AR 646]. Plaintiff was "currently participating in weekly psychotherapy sessions" prescribed by Dr. Procci [AR 642, 663]. Her prognosis was "guarded," and Dr. Procci did not expect significant change within the next 12 months. [AR 642]. He opined that plaintiff had been temporarily totally disabled since September 16, 2010.[3] [AR 663].

---

[2] Those tests were the Bender Gestalt Perceptual Motor Function Test, Beck Depression Inventory, Beck Anxiety Inventory, Sentence Completion Test, Sentence Completion Measure (Work), Epworth Sleepiness Scale, Suicide Probability Scale, Wahler Physical Symptoms Inventory, and the Minnesota Multiphasic Personality Inventory-2. [AR 656-658].

[3] Under California workers' compensation law, "the term 'temporarily totally disabled' means that an individual is 'totally incapacitated' and 'unable to earn any income during the period when he is recovering from the effects of the injury.'" Iatridis v. Astrue, 501 F. Supp. 2d 1267, 1277 (C.D. Cal. 2007) (quoting Booth v. Barnhart, 181 F. Supp. 2d 1099, 1103 n.2 (C.D. Cal. 2002); Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600, 605 (9th Cir.1996); Herrera v. Workmen's Comp. Appeals Bd., 71 Cal. 2d 254, 257 (1969)); see also Robinson v. Workers' Comp. Appeals Bd., 194 Cal. App. 3d 784, 792 (1987) ("The period of temporary total disability is that period when the employee is totally incapacitated for work and during which he may reasonably be expected to be cured or materially improved with proper medical attention[,] or until his condition becomes permanent and stationary.") (internal quotation marks and citations omitted).

Third, Dr. Tashjian, a nonexamining state agency psychiatric consultant who reviewed plaintiff's treatment records, opined that plaintiff had medically determinable, severe "affective disorders" that caused mild restrictions of daily living, moderate difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration. [AR 30, 121-122]. Dr. Tashjian found that plaintiff's severe affective disorders limited plaintiff's mental RFC to understanding, remembering, and carrying out simple work-related tasks in a work setting with reduced interpersonal contact. [AR 125-127].

The ALJ rejected the treating and nonexamining source evidence in determining that plaintiff did not have a medically determinable, severe mental impairment. In so doing, the ALJ "appears to have applied a more stringent legal standard than is warranted by law. We have defined the step-two inquiry as 'a de minimis screening device to dispose of groundless claims.'" Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)).

The ALJ characterized plaintiff's mental health treatment as "limited at best" because she declined prescription medication she was offered for anxiety, nervousness, depression, and sleep dysfunction. [AR 30, 730]. However, plaintiff testified that she attended approximately 30 psychotherapy sessions and that she also saw Dr. Procci for followup appointments. The record also indicates that Dr. Procci referred her for biofeedback therapy, which she underwent on 10 to 12 occasions. [AR 747, 1012-1021]. The ALJ acknowledged that plaintiff attended mental health treatment appointments for over a year. [AR 30, 83-84].

Plaintiff's medication history may be relevant to the credibility of her subjective symptoms, and "[c]redibility determinations do bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and his diagnosed conditions." Webb, 433 F.3d at 688. However, Dr. Procci did not "dismiss [plaintiff's] complaints as altogether unfounded" merely because she underwent therapy and did not take psychotropic medication, and "there is no inconsistency between [plaintiff's] complaints" and Dr. Procci's opinion that is "sufficient to doom [plaintiff's] claim as groundless under the de minimis standard of step two." Webb, 433 F.3d at 688 (citing Batson v. Comm'r of Soc. Sec. Adm'n, 359 F.3d 1190, 1195 (9th Cir. 2004)). In addition, Dr. Procci noted that plaintiff "is psychologically naive and resists a psychological interpretation of her symptoms," which suggests that she may have lacked insight into the need for medication. Cf. Nguyen v.

Chater, 100 F.3d 1462, 1464-1465 (9th Cir. 1996) (observing that "depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious medical illness," and stating that "the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a physician's] assessment of claimant's condition is inaccurate . . . .").

The ALJ also rejected or discounted Dr. Procci's March 2011 opinion on the ground that he "seems to have had little other exposure to her, save for the possible exception of his nominal oversight of her participation in appointments with other sources that totaled a period of only a few months as of the time of the State Agency assessment." [AR 30]. The inference that Dr. Procci had "little other exposure" to plaintiff and "nominal oversight" of her treatment is unwarranted. The record contains Dr. Procci's initial examination report and approximately monthly progress reports signed by Dr. Procci through April 2012. Those progress notes appear to have been prepared for purposes of workers' compensation case, and those from August 2011 through April 2012 include a statement "under penalty of perjury that this report is true and correct to the best of my knowledge . . . ." [AR 1012-1021]. Dr. Procci reported that there was no significant change in plaintiff's condition, that her diagnoses were unchanged, and that she continued to exhibit "adjustment order w[ith] depressed mood," "hopelessness," "tearfulness," and "anxiety." Those reports identify particular providers involved in plaintiff's care, including Jorge Alvarez, a licensed psychotherapist, for psychotherapy, and Norman Levy, M.D., for medical services. Dr. Procci continued to rate plaintiff as temporarily totally disabled. [AR 647-655, 1012-1022]. Even if Dr. Procci mainly oversaw a course of treatment rendered by other providers, as the ALJ apparently surmised, Dr. Procci can still be a treating physician whose opinion is "entitled to greater weight than that of an examining or reviewing physician." Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1039 (9th Cir. 2003) (holding that a psychiatrist could be considered a treating source even though he had seen the claimant only once more than a year before completing a mental functional assessment because he supervised a treatment team,"has had the opportunity to direct and communicate with the treatment team over time," and "is presumably well placed to know their skills, abilities, and therapeutic techniques"). Therefore, for purposes of determining whether plaintiff had a severe, medically determinable mental impairment, the ALJ's reasons for rejecting Dr. Procci's opinion were not specific, legitimate, and supported by substantial evidence in the record. See

Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. . . . Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.") (internal quotation marks omitted).

In addition, the state agency nonexamining psychiatrist, Dr. Tashjian, concluded in July 2011 that plaintiff had severe, medically determinable "affective disorders" based on Dr. Procci's report and on plaintiff's treatment history. [See AR 115-146]. The ALJ rejected the nonexamining source opinion because it was "based on little more than" Dr. Procci's report [AR 30], but since the ALJ erred in rejecting Dr. Procci's report in making his severity finding, his rejection of the psychiatric consultant's opinion was similarly flawed. As plaintiff points out, Dr. Tashjian could have rejected Dr. Procci's opinion and found no severe, medically determinable impairment, but instead Dr. Tashjian gave weight to that report.

The ALJ also failed to discuss or give reasons for rejecting the opinion of a workers' compensation qualified medical examiner, M. Joel Scheinbaum, M.D., who examined plaintiff in November 2011. [AR 30-31, 36]. Dr. Scheinbaum interviewed plaintiff, conducted a mental status examination, reviewed medical records, conducted a mental status examination, and administered psychological tests.[4] [AR 724-766]. Dr. Scheinbaum diagnosed: (1) pain disorder associated primarily with physical factors but a minor psychological condition as well; (2) depressive disorder, not otherwise specified ("NOS"); (3) anxiety disorder, NOS; and (4) psychological factors affecting physical condition, metabolic issues in particular. [AR 740]. He opined that plaintiff "clearly has very significant psychiatric difficulties presently marked by anxiety, nervousness, depression, irritability, frequent crying spells related to her pain, discomfort with adverse impact upon her cognitive functioning, affectual responses with significant behavioral limitations and restrictions as well." [AR 746]. Consistent with Dr. Procci, Dr. Scheinbaum found that plaintiff "lacks psychological orientation, knowledge, insight, and understanding." [AR 740]. Dr. Scheinbaum concluded that plaintiff was "temporarily totally disabled on a combined orthopedic and psychiatric basis . . . ." [AR 747]. Dr. Scheinbaum's findings and conclusions are well-supported and are consistent with those of Dr.

---

[4] Those tests were the Minnesota Multiphasic Personality Inventory-2, Millon Clinical Multiaxial Inventory Test, Brief Symptom Inventory, Epworth Sleepiness Scale, Katz Basis Activities of Daily Living Scale, Self-Evaluation Questionnaire, Wahler Physical Symptoms Inventory, the Beck Depression Inventory, and the Beck Anxiety Inventory. [AR 732-736].

Procci and Dr. Tashjian in demonstrating the existence of a medically determinable, severe mental impairment.

The ALJ relied on the contrary opinion of Edward Ritvo, a board-certified psychiatrist who conducted a consultative psychiatric examination at the Commissioner's request in October 2012. [AR 955-963]. Dr. Ritvo interviewed plaintiff, reviewed medical records, and conducted a mental status examination. He noted that plaintiff "has a long history of chronic pain which has caused her stress. At the present time, she did not endorse sufficient symptoms to warrant a diagnosis on Axis I." [AR 959]. He opined that plaintiff had no psychiatric diagnosis and no work-related mental functional limitations. [AR 959]. Dr. Ritvo's contrary opinion, standing alone, does not justify disregarding Dr. Procci's treating source opinion, which must still be evaluated using the factors set forth in the regulations. See Orn, 495 F.3d at 632 (explaining that "[e]ven when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference,'" and the ALJ must still weigh the treating source opinion by applying the factors listed in 20 C.F.R. § 404.1527(c)(2)-(6)[5]).

In addition to being from a treating source with longitudinal knowledge of plaintiff's condition, Dr. Procci's opinion is better supported than Dr. Ritvo's because Dr. Procci considered extensive psychological test results, and his opinion is more consistent with the record as a whole. Furthermore, Dr. Ritvo evaluated plaintiff's condition in October 2012, several months after plaintiff's mental health treatment apparently ended, and he stated that his opinion concerned her condition "at present." [AR 959].

The medical evidence did not "clearly establish" the absence of a medically determinable, mental impairment for a period of at least 12 consecutive months. See Webb, 433 F.3d at 687. Therefore, the ALJ erred by applying an overly stringent legal standard to find that plaintiff had no medically determinable,

---

[5]Those factors include the length of the treatment relationship, the frequency of examination by the treating physician, and the nature and extent of the treatment relationship between the patient and the treating physician. Additional factors relevant to evaluating any medical opinion include the degree to which the opinion is supported by other evidence in the record, the "quality of the explanation provided" by the physician, the consistency of the medical opinion with the record as a whole, the physician's speciality, and "[o]ther factors" such as the degree of understanding a physician has of the Commissioner's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. Orn,495 F.3d at 631; 20 C.F.R. §§ 404 .1527(d)(2)-(6), 416.927(d)(2)-(6).

severe mental impairment and by failing to utilize the psychiatric review technique. See 20 C.F.R. §§ 404.1520a, 416.920a. A substantial likelihood exists that the ALJ's failure to incorporate a severe, medically determinable mental impairment into his RFC finding that plaintiff could perform a restricted range of sedentary work affected the result and therefore was not "inconsequential to the ultimate nondisability determination," so the error was not harmless See Ludwig v. Astrue, 681 F.3d 1047, 1053-1055 (9th Cir. 2012) (holding that an ALJ's error was harmless where the claimant did not show a "substantial likelihood of prejudice" as a result of the error, and that the harmless error analysis must consider "case-specific factors," including "an estimation of the likelihood that the result would have been different" absent the error); cf. Molina v. Astrue, 674 F.3d 1104, 1121-1122 (9th Cir. 2012) (holding that an ALJ's error in failing adequately to discuss lay testimony was harmless where it was "inconsequential to the ultimate nondisability determination" because the lay witnesses' testimony "did not describe any limitations beyond those [the claimant] described," and the ALJ discussed and rejected the claimant's testimony "based on well-supported, clear and convincing reasons").

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)).

The proper remedy in this case is reversal and remand for further administrative proceedings . On remand, the Commissioner shall direct the ALJ to: (1) conduct a supplemental hearing and fully develop the record; (2) utilize the psychiatric review technique to reevaluate the existence and severity of plaintiff's medically determinable mental and physical impairments at step two of the sequential evaluation, consistent with the analysis in this memorandum of decision; (3) continue the sequential evaluation process beyond

step two; and (4) issue a new written decision containing appropriate findings.[6] See Webb, 433 F.3d at 688 (holding that "[t]he ALJ should have continued the sequential analysis beyond step two because there was not substantial evidence to show that [the claimant's] claim was groundless," and remanding for further administrative proceedings).

## Conclusion

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

May 25, 2016

_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

[6] This disposition makes it unnecessary to consider plaintiff's remaining contentions.

10